[Cite as *State v. Al-Dor*, 2013-Ohio-5731.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99747**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MALIK M. AL-DOR

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-557455

**BEFORE:** Celebrezze, J., Stewart, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 26, 2013

**ATTORNEY FOR APPELLANT**

Patricia J. Smith
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Jeffrey S. Schnatter
           Andrew Rogalski
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Malik M. Al-Dor, appeals his convictions for rape and kidnapping. He alleges that his convictions are against the manifest weight of the evidence. After a thorough review of the record and law, this court disagrees and upholds his convictions and sentence.

## I. Factual and Procedural History

{¶2} Appellant was friends with Hector Olavarria. The two had known each other for several months. Appellant met Olavarria's girlfriend, R.W., and the three hung out together a number of times. On May 11, 2011, R.W. was at a friend's house when she made plans to visit appellant. The two exchanged text messages, and appellant arranged to walk over to meet R.W. and escort her back to his house to wait for Olavarria to get off work, drink, and smoke marijuana. Olavarria planned to join them after he got home from work at approximately 1:00 a.m.

{¶3} At approximately 10:00 p.m., appellant picked up R.W., and the two walked back to appellant's house in Lakewood, Ohio. On the way, they stopped at a store and each purchased an alcoholic beverage.

{¶4} Appellant lived with his parents and other family members. His mother maintained a strict household and did not allow unmarried females into the house to fraternize with her sons. Therefore, appellant snuck R.W. in through a side door that connected directly to the basement. The two hung out in a cramped room in the basement that had a few chairs, a sleeping mat, a television, and a stereo. They were

drinking and smoking marijuana. At first, R.W. was texting her friends and Olavarria, but due to the poor reception in the basement, her phone battery depleted quickly and her phone ceased functioning at approximately 1:00 a.m. She described the situation as two friends hanging out while waiting for her boyfriend to get there.

{¶5} R.W. stated appellant began to steer the conversation to more prurient topics and she became uncomfortable. She wanted to leave, but appellant told her that a friend would give her a ride home if she waited a while longer. After more explicit statements by appellant, R.W. attempted to leave at approximately 4:00 a.m. Appellant got between her and the doorway. She kicked him and pulled his hair, but he pushed her down onto the mat on the floor. According to R.W., appellant threatened her with death and great bodily harm if she called out or attempted to leave. He cautioned her to remain quiet so that his family did not hear her. He then raped her vaginally, anally, and orally. She was allowed to leave around 6:00 a.m.

{¶6} R.W. stated she walked home sobbing. Once there, Olavarria, who had been looking for her most of the night, let her in to their shared apartment. She hysterically relayed the events of the night, and the two arranged a ride to the hospital.

{¶7} R.W. arrived at the hospital but was transferred to a different hospital where she could be examined by a sexual assault nurse examiner (the "SANE"). She was also interviewed by Lakewood police officer Robert Pickens, and her statement was taken. Her clothes were collected by Officer Pickens after she arrived at an apartment where she had other clothes to wear.

{¶8} The case was investigated by Detective Larry Kirkwood, Jr. of the Lakewood Police Department. Det. Kirkwood interviewed R.W., sent collected evidence for DNA testing, and eventually conducted a recorded interview of appellant. After R.W. told the detective the identity of her attacker, Det. Kirkwood asked appellant to voluntarily make a statement. Appellant went to a Lakewood police station and was interviewed by Det. Kirkwood after an explanation and waiver of rights. Det. Kirkwood also obtained a voluntary DNA sample from appellant.

{¶9} The DNA evidence was sent to the Bureau of Criminal Investigation ("BCI") for analysis. A BCI technician forwarded the samples to an independent lab for analysis. Once Det. Kirkwood received the lab report, which indicated appellant was the likely contributor, he initiated appellant's arrest.

{¶10} Appellant was indicted by a grand jury on January 4, 2012. He was charged with two counts of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(3). The kidnapping count carried a sexual motivation specification, and all counts carried sexually violent predator specifications. Appellant chose to have the sexually violent predator specification tried to the bench. The remaining charges were tried to a jury beginning on July 9, 2012.

{¶11} At trial, R.W. and Olavarria recounted the events of May 11 and 12, 2011. The SANE, Barbara Gifford, also testified about her treatment of R.W. Det. Kirkwood and Officer Robert Pickens also testified about their roles in the investigation. Finally, Shawn Weiss, an employee of LabCorp, Inc., testified about the DNA analysis he

conducted. He analyzed the samples collected and utilized a y-chromosome test, called Y-STR, to determine that appellant, or a paternal male relative, could not be excluded as a major contributor of the samples analyzed.

{¶12} The jury found appellant guilty of two counts of rape and one count of kidnapping with sexual motivation. The court found appellant not guilty of the sexually violent predator specification. On July 26, 2012, appellant was sentenced. The court merged the kidnapping count and sentenced appellant to five years on one count of rape and seven years on the other. These sentences were to be served concurrently, for a total sentence of seven years. Appellant was labeled a Tier III sex offender and notified of postrelease control. This delayed appeal followed with leave of this court where appellant assigns one error for review:

> I. The jury clearly lost its way when finding the appellant guilty of forcible rape where the evidence simply does not support such a verdict when the victim had motive to falsify the report and where the facts and circumstances surrounding the incident [do] not support the jury's conclusion.

## II. Law and Analysis

**{¶13}** Appellant claims that the jury's verdicts are against the manifest weight of the evidence. A manifest weight challenge questions whether the state met its burden of persuasion at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. This court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

> Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

(Citations omitted.) *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

**{¶14}** Appellant was convicted of two counts of rape as defined under R.C. 2907.02(A)(2) and one count of kidnapping as defined in R.C. 2905.01(A)(3). These statutes provide in pertinent part, respectively:

> No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim or another[.]

Appellant claims the evidence offered at trial in support of these convictions is unconvincing. We disagree.

**{¶15}** R.W. testified about the ordeal she endured on May 11 and 12, 2011. She testified that she initially was just hanging out with a friend waiting around until her boyfriend could join them for the evening. When she became uncomfortable and wished to leave, appellant kept coming up with excuses as to why she should wait. He told her she could not leave because his family members would see her and he would get in trouble. He also indicated the door at the top of the stairs was locked. This went on for some time until R.W. attempted to leave the basement. She was physically prevented from leaving by appellant. He then threatened her that she had to remain quiet and have sex with him if she wanted to leave. He threatened her with bodily harm and death if she did not comply. She testified that appellant raped her vaginally, anally, and orally.

**{¶16}** At trial, appellant's counsel attempted to color R.W.'s testimony as that of a woman who had consensual sex and did not want to get in trouble with her boyfriend. This defense contrasts greatly with appellant's recorded statement that was played for the jury. There, he denied having sex with R.W. and denied that she had ever been in his basement. However, R.W. described to police officers the room in the basement in great detail despite appellant's claims that she had never been in the basement before. The

DNA analysis performed on samples collected by the SANE from R.W.'s vagina and anus also revealed that appellant was a likely contributor. This stands in stark contrast to appellant's statement to police that he did not have sex with R.W. and she had never been in his basement. This is not a case where the evidence presented at trial weighs in appellant's favor. The evidence adduced demonstrates appellant's guilt.

{¶17} R.W. clearly testified to all the elements of rape. She indicated that appellant threatened her with bodily harm and death if she did not keep quiet and have sex with him. She cried throughout the rape, and appellant told her to stop crying and be quiet.

{¶18} The kidnapping subsection under which appellant was convicted is not the usual one associated with rape, R.C. 2905.01(A)(4). It appears the state was attempting to distinguish the conduct and charges in the present case from those where the kidnapping and rape convictions would normally merge at sentencing.[1] Despite this, the testimony clearly met the elements of kidnapping under R.C. 2905.01(A)(3). R.W. testified to being forcefully restrained from leaving the basement by appellant. It is also difficult to imagine that the act of forcible rape would not qualify as terrorizing or inducing terror in the victim, thereby satisfying that element of the kidnapping offense. The Ninth District has found that captivity coupled with acts of violence, sexual assault, threats, and acts inducing fear satisfy elements of kidnapping under R.C. 2905.01(A)(3).

---

[1] The state's attempt to avoid merger ultimately failed when the trial court determined that the kidnapping was incidental to the rape and merged it at sentencing.

*State v. Razzano*, 9th Dist. Lorain No. 96CA006630, 1998 Ohio App. LEXIS 1752 (Apr. 22, 1998). That case had more acts of violence and torture, but stands for the proposition that acts such as those in the present case may constitute the elements of kidnapping under R.C. 2905.01(A)(3). In the present case, appellant's acts of hitting R.W., pushing her, raping her, and threatening to kill her meet the "terrorize" element in this case.

{¶19} Appellant claims R.W.'s testimony cannot be believed because it was inconsistent and incredible. He claims that at any time she could have yelled and his family members would have heard her and she could have escaped. However, R.W. testified that for most of the night, she remained in the basement and was quiet because she was hanging out with a friend who she did not want to get in trouble. She testified that, throughout the night, he came up with excuses as to why she needed to wait a bit longer to leave. Once she attempted to leave, he assaulted her, threatened her, and made her be quiet.

{¶20} After a review of the record, it is clear that the jury did not lose its way in convicting appellant of rape and kidnapping.

### III. Conclusion

{¶21} Appellant's convictions for rape and kidnapping were established beyond a reasonable doubt. The victim's testimony was found to be credible by the jury and was corroborated by her detailed description of the basement room, as seen in the photographs introduced by the state. DNA evidence also corroborated R.W.'s testimony. The jury did not clearly lose its way in this case.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR